IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAMON DEMOND STAFFORD,      )
                            )
        Plaintiff,          )
                            )
    v.                      )    1:16CV419
                            )
KAREN HENDERSON, et al.,    )
                            )
        Defendants.         )

## MEMORANDUM ORDER

The Recommendation of the United States Magistrate Judge (Doc. 3) was filed with the court in accordance with 28 U.S.C. § 636(b) and, on May 26, 2016, was served on the parties in this action. Stafford filed a timely objection. (Docs. 7, 7-1.)[1] The court has reviewed the portions of the Recommendation to which objections were made and has made a de novo determination, which is in accordance with the Magistrate Judge's decision. As a result, the court will adopt the Recommendation and dismiss this action for failure to state a claim upon which relief can be granted.

---

[1] Stafford timely filed his objection through the prison mailing system. (See Doc. 7-2); Houston v. Lack, 487 U.S. 266, 275 (1988) (explaining the prison mailbox rule). The court did not receive Stafford's objection, however, until after it entered an order adopting the Magistrate Judge's Recommendation and dismissing this action. (See Doc. 5.) In light of Stafford's timely objection, the court will vacate its prior Judgment and consider the issues he raises.

1

I.  BACKGROUND

The facts alleged in Plaintiff's complaint, accepted as a true, are as follows:

Stafford was a State prisoner housed in the Scotland Correctional Institute in Laurinburg, North Carolina. (Doc. 2 at 5.) On November 3, 2015, Stafford was placed in administrative segregation after a group of inmates engaged in a group demonstration at the prison. (Id.) Officer Smith informed Stafford that he had been placed in segregation at the behest of Captain Henderson, who claimed to have viewed a video of Stafford disobeying orders while standing in a doorway at the prison. (Id.) Stafford told Officer Smith that he did not take part in the demonstration and requested access to the video as well as statements from two prison staff members to corroborate his story. (Id. at 5-6.) These requests were denied. (Id. at 6.)

On December 4, 2015, Officer Locklear presided over Stafford's disciplinary hearing. (Id. at 6-7.) At the hearing, Officer Locklear read statements from Captain Henderson and Sergeant Brookins, both of whom claimed to have watched the video of the incident and identified Stafford as disruptive. (See id. at 6.) Stafford argued that there are no cameras in the area where the demonstration occurred and, therefore, no video of the

2

incident could exist. (Id.) As a result, Stafford insisted that Officer Locklear order that the video be produced so that either Stafford or Locker could review it. (Id. at 6-7.) Officer Locklear denied Stafford's request, noting that she did not have access to the video because she was not employed by the prison and concluding that the statements from Captain Henderson and Sergeant Brookins provided sufficient evidence of guilt. (Id.) Officer Locklear then found Stafford guilty of participating in the disruption. (Id. at 7.) Stafford received an additional period of segregation, a $10.00 fine, loss of credit time, and various other punishments. (Id.) On January 5, 2016, an unidentified State official denied Stafford's appeal. (Id.)

On May 2, 2016, Stafford filed this § 1983 action, claiming that each of the defendants denied him due process of law. (See id. at 8, 10.) According to Stafford, no video of the incident exists because the doorway area in question is too close to shower facilities to permit video cameras. (Id. at 8.) As a result, Stafford contends that Captain Henderson knowingly initiated false charges against him and that Captain Henderson and Sergeant Brookins lied about a fictitious video in order to substantiate these charges. (Id. at 8.) He further contends that Officer Locklear denied his due process rights by relying on the other

3

Officers' testimony instead of ordering that the video be produced so that she or Stafford could inspect it. (Id.)  He further contends that the State's appeals officer, whose identity Stafford does not yet know, denied his due process rights by failing to reverse Locklear's decision. (Id.)  Although Stafford does not identify a specific complaint against Officer Smith, he appears to believe that Officer Smith failed to adequately investigate his claims of innocence. (See id. at 5–6.)

**II. ANALYSIS**

Because Stafford is a prisoner seeking redress from officers and employees of a governmental entity, the court must review his action and dismiss any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted.  28 U.S.C. § 1915A(a), (b)(1).  A complaint fails to state a claim upon which relief may be granted when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Stafford contends that the defendants denied him due process of law through the manner in which they handled his disciplinary proceeding.  As the Magistrate Judge noted, however, "Prison

4

disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Instead, a prisoner is generally only entitled to "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). In addition, the factfinder's decision must find some support in the evidence. Id. at 455.

Stafford does not dispute the Magistrate Judge's conclusion that he received advanced written notice of the charges against him, an opportunity to be heard, and a written statement explaining the factfinder's decision. Nor does he claim that the factfinder's decision has no support in the evidence. Instead, Stafford raises a number of additional issues, only two of which warrant discussion here.

Stafford first cites Young v. Lynch, 846 F.2d 960 (4th Cir. 1988), for the proposition that prison officials must produce evidence at a disciplinary hearing when "it is the dispositive

5

item of proof, it is critical to the inmate's defense, it is in the custody of prison officials, and it could be produced without impairing constitutional concerns." Id. at 963. Because the disclosure of surveillance footage to prison inmates presents legitimate practical and safety concerns, however, this statement does not apply under the circumstances of this case. See Bogue v. Vaughan, 439 F. App'x 700, 706 (10th Cir. 2011) (finding that practical and safety concerns justified a hearing officer's reliance on descriptions of surveillance footage, rather than production of the footage itself); Estrada v. Holinka, 420 F. App'x 602, 605 (7th Cir. 2011) (same); Alexander v. Schleder, 790 F. Supp. 2d 1179, 1186–87 (E.D. Ca. 2011) (same), aff'd, 508 F. App'x 605 (9th Cir. 2013); see also Wolff, 418 U.S. at 566 (holding that prisoners need only be given access to documentary evidence when doing so "will not be unduly hazardous to institutional safety or correctional goals"); (Doc. 2 at 7 (alleging that Officer Locklear stated that she had no authority to order production of the video because she is not employed by the prison)).

Stafford's other main objection stems from his allegation that some of the Defendants knowingly presented false evidence during his disciplinary hearing. Stafford principally relies on Morrison v. Lefevre, 592 F. Supp. 1052 (S.D.N.Y. 1984). In

6

Morrison, the court stated,

> The introduction of false evidence in itself violates the due process clause. . . . The fact that prisoners are not entitled to the full panoply of procedural protections afforded at trial when they are subject to internal prison discipline does not deprive them of the fundamental right not to have state officials make purposefully false statements about them.

Id. at 1073. The Second Circuit later made clear, however, that "[t]his broad dictum . . . must be read in the factual context of the Morrison case," in which the prisoner received no hearing at all. Freeman v. Rideout, 808 F.2d 949, 952 (2d Cir. 1986). Unlike a criminal prosecution, when a prisoner receives a disciplinary hearing and the other procedural protections afforded by Wolff, the mere introduction of false evidence by state actors during a disciplinary proceeding does not create a per se violation of the prisoner's due process rights. See id. at 952–53; Spellmon v. Price, 100 F.3d 953 (Table), 1996 WL 625422, at *3 (5th Cir. Oct. 10, 1996) (unpublished); Lattimore v. Perry, No. 1:15cv104, 2015 WL 3440840, at *1 (M.D.N.C. May 28, 2015) (recommendation of Peake, M.J.) (finding no due process violation when prisoner claimed that an investigating officer falsified documentary evidence and the hearing officer did not allow the prisoner to view the disciplinary package); see also Freeman, 808 F.2d at 951 ("The prison inmate has no constitutionally guaranteed immunity from being falsely or

7

wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984) ("The knowing use of false testimony by a government official in a criminal trial is distinguishable from a guard testifying falsely or planting false evidence for use in a disciplinary proceeding."); cf. United States v. Kelly, 35 F.3d 929, 933 (4th Cir. 1994) ("A conviction acquired through the knowing use of perjured testimony by the Government violates due process." (emphasis added)).

Finally, even if the allegations in Stafford's complaint were sufficient to establish a due process violation, the court would still be compelled to dismiss his § 1983 action. A plaintiff may not bring a § 1983 action that would necessarily imply the invalidity of a State conviction or sentence without first having the conviction or sentence reversed, overturned, expunged, or otherwise called into question. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). This principle applies with equal force to prison disciplinary proceedings. Edwards v. Balisok, 520 U.S. 641, 646-48 (1997). As a result, the court must dismiss § 1983 claims involving disciplinary proceedings that have not been invalidated when those claims are based on alleged deceit by prison officials rather than the insufficiency of the evidence or some other

8

procedural defect.  See, e.g., Sawyer v. Mull, No. 1:14-cv-233-FDW, 2015 WL 1931317, at *2-3 & n.1 (W.D.N.C. Apr. 28, 2015); Graham v. Washington, Civil Action No. 7:07CV00381, 2007 WL 4613037, at *3 & n.1 (W.D. Va. Dec. 31, 2007).  To the extent that Stafford seeks restoration of his good time credits, he must do so by way of a writ of habeas corpus, and only after he has exhausted his State court remedies.  Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Sawyer, 2015 WL 1931317, at *2; Graham, 2007 WL 4613037, at *3 & n.1.  Thus, dismissal of this case will be without prejudice to Stafford's right, if any, to seek such further relief.

**III. CONCLUSION**

For the reason stated, therefore,

IT IS ORDERED that the court's prior Judgment (Doc. 5) is VACATED.

IT IS FURTHER ORDERED that this action be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted.

                                /s/   Thomas D. Schroeder
                            United States District Judge

August 26, 2016